**Joseph BEARD, Appellant–Plaintiff,**

v.

**LAKE SANTEE PROPERTY OWNERS ASSOCIATION, INC., Appellee–Defendant.**

No. 16A01–0411–CV–470.

Court of Appeals of Indiana.

June 17, 2005.

Ronald Beard, Greensburg, for Appellant.

Robert D. Wickens, Wickens & Wickens, LLC, Greensburg, for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff Joseph Beard appeals the trial court's judgment entered in favor of appellee-defendant Lake Santee Property Owners Association, Inc. (Association), which determined that the rule limiting the keeping of motor homes within the Lake Santee subdivision is valid and enforceable by the Association. In particular, Beard claims that the rule was void and that he should be compensated for the enactment of such an allegedly unreasonable rule. Concluding that Beard has failed to show that the rule amounted to an improper "taking" of his property and finding that the Association had the authority to promulgate such a rule, we affirm the judgment of the trial court.

### FACTS

The Association, located in Decatur County, holds legal title to the lake, beaches, parking areas, and road for the common use by all members of that entity. On January 18, 1986, Beard applied for membership in the Association, whereby he explicitly agreed to accept and abide by its rules and regulations. The restrictions contained in the warranty deed to Beard's lot at the Lake provided that the property owners at Lake Santee agreed to comply with the rules and regulations that the Association adopts. Additionally, Lake Santee's Articles of Incorporation stated that the Association's purpose is to provide Rules and Regulations for the "maintenance, upkeep, and enhancement of each owner's property" that would inure to the benefit of all Association members. Appellee's App. p. 32. At some point, Beard had served on the Association's Board of Directors (Board), where he was involved in the promulgation, interpretation and enforcement of various rules and regulations.

Lake Santee originally enacted Rule and Regulation 4.1.3, which provided that "Mobile homes as defined by the Board of Directors will not be permitted on Lake Santee property. No type of camping vehicle can be permanently parked on the lot of any property owner." Pl.Ex. 2. A companion regulation, number 3.1.6, provided that the "parking of campers at night will not be permitted in any boat or beach parking areas, but must be located on the property owner's lot." *Id.* Beard had purchased a motor home in August 1997, and parked it on his real estate.

In 1998, the Board decided to clarify that motor homes could be parked on lots, with or without residences, on a temporary basis only. As a result, the Board adopted Regulation 11.3, which limited the parking of motor homes on private property. This Rule stated:

Mobile homes, defined as a self propelled camper with sanitary facilities designed and manufactured for such use, are permitted in the subdivisions for use as temporary camping facilities. Motor homes are not to be used as permanent

living quarters. Motor homes on vacant lots must be in use every night or removed from the subdivisions. No motor home shall be in the subdivision for more than 14 consecutive days. A five day interval shall be required between stays. No motor home shall be in use for a total of more than 28 days per year. Motor homes may not be parked on Association access areas or parking lots at night. All motor homes must have current license and registration. Motor homes will not be permitted to be stored within the subdivision, except members currently storing a motor home at their residence within the subdivision as of November 1, 1997 will be permitted to continue to store that same motor home until November 1, 2002.

Appellee's App. p. 4. Because several of the members had been parking their motor homes on their lots, the Board decided to include the provision allowing members who already had a motor home at their residence to continue doing so until November 1, 2002. Hence, the Board proceeded to notify those who had motor homes parked on their lots.

According to Darrow McCreary, the Association's Manager, the Association was not aware that Beard had a motor home parked at his residence when the Rule was adopted. In September 1998, McCreary sent Beard a notice indicating that he was in violation of the rule on motor homes. Beard responded that he had parked the motor home at his residence from the time that he had purchased it in August 1997. Like the others who had parked motor homes at their residences before the Rule was clarified, the Association permitted Beard to keep his motor home on his property until November 1, 2002, as provided in the Rule. The other members removed their motor homes by that date, but Beard did not.

Thereafter, on November 9, 2001, the Association sent Beard a notice stating that he would have to move his motor home the following year in order to comply with the Rule. As a result, Beard contested the provisions contained in Rule 11.3. A hearing was held before the Board on October 9, 2002, regarding Beard's request to be exempted from the Rule. In the end, Beard's request was denied.

Beard eventually removed his motor home from his lot. However, in 2003, Beard again parked the motor home on his property. After being informed that his actions were in violation of the rule, Beard moved the motor home to another lot. After determining that Beard was continuing to violate the rule, the Board fined Beard $5 per day for twenty-one days, which Beard ultimately paid.

Thereafter, Beard filed an action in the trial court, seeking an exclusion from the Rules and Regulations. Beard also sought damages and injunctive relief. The trial court ultimately determined that the Association had the authority to impose limitations on the parking of motor homes within the subdivision. As a result, the trial court denied Beard's request for relief. He now appeals.

## DISCUSSION AND DECISION

### I. Standard Of Review

We first note that Beard is appealing from a negative judgment. To prevail on appeal, he must demonstrate that the trial court's findings of fact are clearly erroneous or the judgment is contrary to law. To determine whether the judgment is contrary to law, we consider the "evidence in the light most favorable to the appellee, together with all reasonable inferences to be drawn therefrom." *Hinojosa v. Bd. of Pub. Works & Safety*, 789 N.E.2d 533, 542 (Ind.Ct.App.2003), *trans. denied.* A judg-

ment will be reversed only if the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *Id.* This court will not reweigh the evidence or judge the credibility of witnesses, and we will affirm the trial court's decision if the record contains any supporting evidence or inferences. *N. Elec. Co., Inc. v. Torma,* 819 N.E.2d 417, 421–22 (Ind.Ct.App.2004).

## II. Beard's Claims

### A. Alleged Taking and Grandfather Rights

■ Beard claims that Regulation 11.3 is unlawful because he previously enjoyed an unlimited right to park his motor home on his own property "at such times as he wished and as long as he pleased, subject only that it could not be permanently parked as a lake cottage." Appellant's Br. p. 3. Hence, Beard claims that after the adoption of Regulation 11.3, the use of his property became limited to the extent that the Association's actions amounted to an unlawful taking of his property.

■ In addressing this issue, we note where—as here—a corporation organized under Indiana's Not–for–Profit Corporation Act may charge fees and assessments for members and set conditions for membership. Ind.Code § 23–17–4–2(14). It may do all things necessary and convenient, not inconsistent with the law, to further the activities and affairs of the corporation. I.C. § 23–17–4–2(19). An association may adopt a constitution, by-laws, or rules and regulations to control internal policies. *State ex. rel. Givens v. Super.Ct. of Marion County,* 233 Ind. 235, 117 N.E.2d 553, 555 (1954).

In this case, the Lake Santee Subdivision Restrictions (Restrictions) and the Articles of Incorporation grant the Association the authority to assess fees and limit the use of property for the benefit of all

members. Appellee's App. p. 7–8. As noted above, Beard voluntarily joined the Association and agreed to abide by its rules and regulations. *Id.* at 17, 18. The rule change that was enacted in 1998 served to clarify the pre-existing rule that had been in effect since at least 1974. That rule provided that "[n]o type of camping vehicle can be permanently parked on the lot of any property owner." Appellee's App. p. 19. By the same token, the revised rule in 1981 provided that "[n]o *motor homes* can be permanently parked on the lot of any property owner." *Id.* at 21 (emphasis added). It follows, therefore, that all camping vehicles—including motor homes—had been prohibited from being permanently on members' lots since 1974. From this language, it is apparent that motor homes were specifically prohibited from being permanently parked on a lot in 1986 when Beard applied and was accepted for membership in the Association. *Id.* at 17.

We further note that McCreary testified that motor homes were allowed in the subdivision on a temporary basis. He indicated that "permanent" meant that motor homes were not permitted to be stored within the subdivision. Tr. p. 34. McCreary also acknowledged that before the 1998 revision, some of the members had misinterpreted the rule:

> [B]ecause some people were reading the rule because it said no, no motor home could be permanently parked on the lot of any property owner, those people that had homes didn't consider themselves lot owners, but rather home owners. So they kind of thought the rule didn't apply. But obviously even though they own a home, they still have a lot, and the rule stood, and should have been applied to them equally.

*Id.* While enforcement against members who stored a motor home at their resi-

dence had been somewhat sporadic, McCreary testified that the rule had always been strictly enforced against those who attempted to store a motor home on an empty lot. Tr. p. 33–34. Then, as set forth above, the 1998 revision clarified that Association members, including lot owners with residences on their property, were prohibited from storing their motor home in the subdivision.

While Beard asserts that the Association wrongfully took a property right from him, he advances no authority for the proposition that a voluntary property owner association is subject to the "takings clause." To be sure, the only case that Beard cites in support of this argument is *Ailes v. Decatur County*, 448 N.E.2d 1057 (Ind. 1983). However, *Ailes* involved a county zoning board and not a voluntary property owner's association. In any event, Beard has simply failed to demonstrate that the Association unconstitutionally took any pre-existing property right from him, or that the rule amounted to an unconstitutional "taking" of property without due process of law. As a result, Beard has failed to show that the trial court's findings and conclusions were clearly erroneous or contrary to law. Thus, we decline to set aside the judgment on this basis.

### B. The Association's Authority to Promulgate Rules

In a related issue, Beard goes on to argue that the Board lacked the authority to adopt regulations that limit the use of real estate that the members of the Association owned. In essence, Beard complains that the adoption of such a rule was beyond the power of the Board as limited by the corporate bylaws.

In this instance, we note that Beard stipulated to the Restrictions and their application to his property. Appellee's App. p. 6. He also acknowledged at trial that the Restrictions applied to his property. Tr. p. 14. To be sure, those Restrictions were contained in the deed from Lake Santee to the prior owner of Beard's lots, and they were recorded in the plat book in the Decatur County Recorder's Office. In particular, Restriction Number Eight provided that "the purchaser agrees ... to comply with all rules and regulations from time to time promulgated by said Association." Appellee's App. p. 7. Although Beard testified that he uses his motor home as a base for his business, another Restriction stated that "said lots shall be used exclusively for residential purposes" except for lots specifically designated or zoned as business or commercial areas. Appellee's App. p. 7. And Restriction Number Two prohibits house trailers from the subdivision. Here, the trial court found that trailers and motor homes are sufficiently similar so that the parking of motor homes could be limited within the subdivision. Appellee's App. p. 7.

Moreover, the Articles permit the Association to promulgate rules and regulations for the maintenance, upkeep and enhancement of each member's property. Appellee's App. p. 8. Be that as it may, Beard contends that the terms "maintenance, upkeep and enhancement" pertaining to the use of property in the subdivision as set forth in the Articles of Incorporation, cannot limit the "use" of property in relation to the parking of a motor home. Appellant's Br. p. 6–7. However, in our view, it takes little imagination to understand that parking a motor home easily fits into the category of "upkeep and enhancement" of real property. And, as noted above, when Beard joined the Association, he agreed to comply with the Rules and Regulations in return for the acceptance of his Associa-

tion membership application. As a result, we affirm the trial court's judgment concluding that the Association had the authority to promulgate the Rules and Regulations in this instance. And we further conclude that Beard should not be excluded from those Rules and Regulations that apply to all members of the Association.

The judgment of the trial court is affirmed.

KIRSCH, C.J., and BARNES, J., concur.